## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| GIOVANNI OTTAVIANI, individually and derivatively on behalf of 5472 Milwaukee LLC, and NEW PARADISE S.R.L., | ) ) ) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) | 23 C 2865 |
|  | ) |  |
| FORTUNATO RUBINO, VITO RUBINO, MARIA RUBINO, 5472 MILWAUKEE LLC, RUBINO OTTAVIANI LLC, and RUBINO PROPERTIES LLC, | ) ) ) ) |  |
|  | ) |  |
| Defendants. | ) |  |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court are Defendant Fortunato Rubino's ("Fortunato") motion to dismiss and Defendant Maria Rubino's ("Maria") motion to dismiss. For the following reasons, Fortunato's motion is granted-in-part and denied-in-part and Maria's motion is granted.

## BACKGROUND

Plaintiffs Giovanni Ottaviani and New Paradise S.r.l. ("New Paradise") (together, "Plaintiffs") initiated this case against Defendants Fortunato Rubino ("Fortunato"), Vito Rubino ("Vito"), Maria Rubino ("Maria"), 5742 Milwaukee LLC ("5742"), Rubino Ottaviani LLC ("RO LLC"), and Rubino Properties LLC ("RP LLC")

(together, "Defendants") on May 5, 2023.  Dkt. # 1.  Plaintiffs filed the operative amended complaint on June 30, 2023.  Dkt. # 21.  RP LLC's motion to dismiss all claims against it was granted on March 22, 2024.  Dkt. # 50.

At a high level, Plaintiffs allege a scheme to defraud Ottaviani stemming from Ottaviani's investment in a business venture with Fortunato.  Plaintiffs' amended complaint asserts nine claims: (1) violations of the Lanham Act, 15 U.S.C. § 1051 *et seq*.; (2) breach of fiduciary duty; (3) fraudulent misrepresentation; (4) fraudulent concealment; (5) conversion; (6) unjust enrichment; (7) aiding and abetting breaches of fiduciary duty; (8) civil conspiracy; and (9) accounting.  Dkt. # 21.  Fortunato seeks dismissal of all claims against him, i.e., Counts I–VI and VIII–IX.  Dkt. # 38.  Maria seeks dismissal of all claims against her, i.e., Counts VII and VIII.  Dkt. # 43.

The following facts come from the amended complaint and are assumed true for the purpose of this motion.  *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013).  All reasonable inferences are drawn in Plaintiffs' favor.  *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014).

Ottaviani, through New Paradise, operates a successful bakery in Palermo, Sicily ("Palermo Bakery").  "New Paradise" is a registered Italian trademark owned by Plaintiff New Paradise.  Ottaviani's family has operated the Palermo Bakery since 1978 and spent decades building up its reputation and goodwill with the Palermo Bakery's customers and suppliers.  The Palermo Bakery's brand is well-known in Italy and in other areas, particularly those with residents of Italian descent.

2

In 2018, Fortunato and Ottaviani began discussing a business venture ("Business") in which Fortunato would create a branch of the Palermo Bakery in Chicago ("Chicago Bakery") and purchase a building to be used in operating the Chicago Bakery and to generate rental income. The building was located in Chicago at 5742 North Milwaukee Avenue ("Building").

In exchange for the Chicago Bakery's use of the Palermo Bakery's name, Ottaviani's financial contributions to the Business, Ottaviani's expertise, and Ottaviani's expenditure of time and effort to train members of the Chicago Bakery's staff and assist with its operations, Fortunato agreed that Ottaviani would become a one-third owner of the Business and would be entitled to a proportionate share of its proceeds. This would include income generated by the Chicago Bakery and income generated by renting the units in the Building.

On December 20, 2018, Fortunato organized 5742 as an Illinois limited liability company created in connection with the Business. Around March 1, 2019, Fortunato and Ottaviani executed an operating agreement for 5742 ("Operating Agreement"). Plaintiffs assert that Ottaviani neither speaks nor reads English and "reposed his full trust in Fortunato [] in connection with executing the Operating Agreement." Dkt. # 21, ¶ 43. Among other things, the Operating Agreement entitled Ottaviani to allocations of 5472's profits and distributions of its net operating cash flow. To date, Ottaviani has not received any such allocations or distributions.

In March 2022, the Chicago Bakery held its grand opening and began operating.

3

At the time of the opening, the connections between the Chicago Bakery and the Palermo Bakery were featured prominently on the Chicago Bakery's website. The website stated "Baking Traditions Since 1978" and that "New Paradise began its story in 1978 in Palermo, Sicily" and has been "growing and improving [its] business for over 40 years." *Id.*, ¶¶ 66–67. The website also stated that "[w]hat started as a traditional Sicilian bakery and gelateria has now become so much more." *Id.* ¶ 68. Plaintiffs allege that the name and brand recognition associated with the name "New Paradise" played a critical role in establishing and promoting the Chicago Bakery.

Ottaviani has contributed approximately €440,000 to the Business, which was intended to be used, in part, to pay the Chicago Bakery's suppliers. But several of the suppliers (who also supply the Palermo Bakery) have not been paid, thereby negatively affecting Plaintiffs' reputation.

Ottaviani has twice formally inquired into how the funds he invested in the Business have been used. During a February 2023 in-person meeting between Ottaviani and Fortunato, Ottaviani voiced his concerns about the Business, including but not limited to the absence of any earnings, the unpaid invoices, and the fact that the Business's license was being held by, a different company, RO LLC. Fortunato was unable to explain the Chicago Bakery's use of Ottaviani's funds. Fortunato also declined to explain the same in response to a March 2023 demand and cease-and-desist letter from Plaintiffs' counsel. The letter requested (a) that Ottaviani be made whole for the funds he invested in the Chicago Bakery, (b) that Fortunato provide Ottaviani

4

with a full accounting of the corporate books and records for 5742, RO LLC, and RP LLC, and (c) that the Chicago Bakery cease and desist using Plaintiffs' alleged trademark, including but not limited to using the name and logo "New Paradise" in any form and asserting any connection to the Palermo Bakery.

On April 15, 2019, Fortunato organized RO LLC as an Illinois LLC. Ottaviani alleges he did not know Fortunato formed RO LLC, that RO LLC was formed to hold the business license for the Chicago Bakery, or that any aspect of the Business would be managed through RO LLC. Ottaviani never consented to having any aspects of the Business managed, or any assets of the Business held, by RO LLC. After the Chicago Bakery began operating, it came to Ottaviani's attention that RO LLC holds the business license for the Chicago Bakery. Ottaviani was not originally a manager of RO LLC but after meeting with Fortunato in 2023, Fortunato "caused the corporate records for [RO LLC] to reflect that Ottaviani is a manager of RO LLC." Dkt. # 21, ¶ 92. Ottaviani alleges he was designated as a manager without his prior knowledge or consent. RO LLC's Illinois LLC File Detail Report lists Fortunato, Vito (Fortunato's son), and Ottaviani as managers of RO LLC. Dkt. # 21-3, at 2.[1] Ottaviani alleges he has no ownership interest in RO LLC.

Fortunato organized RP LLC on June 16, 2016. Fortunato and his wife, Maria, are managers of RP LLC and manage several properties through RP LLC. Ottaviani is

---

[1] Ottaviani alleges he is "not a member" of RO LLC, despite the attached exhibit and despite the amended complaint's allegation that Ottaviani is a manager of RO LLC.

not a member of RP LLC.

Plaintiffs allege that at all relevant times, Vito and Maria were aware of Ottaviani's involvement in the Business, were aware of Fortunato's alleged mismanagement and misuse of Ottaviani's funds, and benefitted from Fortunato's alleged misconduct.

After the Chicago Bakery began operating, it came to Ottaviani's attention that Maria granted a mortgage on the Building to Pan American Bank & Trust in exchange for a loan of $600,000 ("the Mortgage"). The Mortgage states that the borrower is 5742 and it was signed by Maria as the "Authorized Signatory of [5742], an Illinois Limited Liability Company". Dkt. # 21-9, at 1, 16.

Since the opening, it has also come to Ottaviani's attention that certain suppliers with whom he had longstanding relationships through the Palermo Bakery had not been paid for supplies they furnished to the Chicago Bakery.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The Court accepts as true well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations, but it must provide

enough factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the complaint contains sufficient alleged facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

When claiming fraud, a party "must state with particularity the circumstances constituting fraud []. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The requirement that fraud be pled with particularity "ensures that plaintiffs do their homework before filing suit and protects defendants from baseless suits that tarnish reputations." *Pirelli Armstrong Tire Corp. Retiree Med. Ben Tr. v. Walgreen Co.*, 631 F.3d 436, 439 (7th Cir. 2011). This requirement is not rigid, and what must be alleged will vary depending on the facts of the case. *Id*. at 442. The heightened pleading standard applies to all allegations of fraud (such as misrepresentation), not merely claims labeled fraud. *Id*. at 447.

<u>**DISCUSSION**</u>

**I.    Fortunato's Motion to Dismiss**

    **a.  Unfair Competition Under the Lanham Act**

Fortunato first seeks to dismiss Plaintiffs' claim for unfair competition under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).  The Amended Complaint alleges that the name "New Paradise" is a registered Italian trademark which is owned by Plaintiffs.  It further alleges that Fortunato, Vito, and RO LLC's (doing business as the Chicago Bakery) use of "New Paradise" has caused a "likelihood of confusion and public deception and serious injury to the goodwill and reputation of the Palermo Bakery."  Dkt. # 21, ¶ 102.  Plaintiffs state they are pursuing an unfair competition claim under Section 43(a)(1)(a) of the Lanham Act.  Dkt. # 46, at 4.

Section 43(a)(1)(a) of the Lanham Act sets forth the cause of action for false association:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

Fortunato asserts that Plaintiffs fail to allege they own a protectable mark. He argues that ownership of a mark in one country does not automatically confer the right to use that mark in another country, and that Plaintiffs do not allege they took any steps to protect their purported trademark in the United States. Plaintiffs respond that because they are asserting a claim for unfair competition, and *not* trademark infringement, they are not required to allege a protectable mark or that the mark was used in the United States.

The Court must address the preliminary issue of whether Plaintiffs have standing to bring their Lanham Act claim. *See Bazile v. Fin. Sys. of Green Bay, Inc*., 983 F.3d 274, 281 (7th Cir. 2020) ("Federal courts 'have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.'") (quoting *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011)); *Rodriguez v. TRP Acquisition, Inc*., 2024 WL 308464, at *2 (N.D. Ill. 2024) ("Because standing is a jurisdictional requirement, a district court may dismiss a case *sua sponte* if it determines that a plaintiff lacks standing.") (citation omitted).

To establish standing under Section 43(a), a plaintiff must satisfy the Supreme Court's two-part test. First, the plaintiff must establish that its claim falls within Section 43(a)'s zone of interests by plausibly alleging "an injury to a commercial interest in

reputation or sales." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 13–32 (2014). Second, the plaintiff must allege that the defendant proximately caused its injury. *Id*. at 132. To do so, the plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising, and [] that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id*. at 133. Courts, including in this District, have applied *Lexmark*'s standing analysis to both false advertising and false association claims under Section 43(a). *See*, *e.g.*, *Towada Audio Co. v. Aiwa Corp.*, 2019 WL 1200748, at *7 (N.D. Ill. 2019); *Martin v. Wendy's Int'l, Inc*., 183 F. Supp. 3d 925, 932 n.4 (N.D. Ill. 2016). Here, Plaintiffs have failed to establish standing under *Lexmark*.

Plaintiffs fail to sufficiently plead Fortunato proximately caused any injury because his alleged "deception of consumers causes them to withhold trade from" Plaintiffs. *See Lexmark*, 572 U.S.at 133. The amended complaint is devoid of any allegations that customers of the Chicago Bakery would have otherwise made a purchase from the Palermo Bakery in Italy, that potential customers of the Palermo Bakery are in any way deterred based on the alleged false association, or that the Palermo Bakery is suffering in any identifiable way due to the Chicago Bakery's alleged false association.[2] Plaintiffs do not allege they had customers, or intended to start

---

[2] The only potentially relevant allegation is that "several of the Chicago Bakery's suppliers have not been paid, thereby negatively affecting Plaintiffs' reputation, given that the same suppliers that supply the Chicago Bakery also supply the Palermo Bakery." Dkt. # 1, ¶ 7. But because the inquiry turns on whether *consumers* (not suppliers) have been deceived and withheld trade from Plaintiffs, it does not alter our analysis.

operating, in Chicago or even the United States. *See Martin*, 183 F. Supp. 3d at 932–33. Unlike in *Towada*, where the plaintiffs alleged the defendant's conduct deprived them from using their mark in the United States and created actual confusion amongst the plaintiff's distributors, we cannot "reasonably infer from Plaintiffs' allegations that [Fortunato's] conduct [] has caused consumers to withhold trade from Plaintiffs." *See Towada*, 2019 WL 1200748, at *7.

Even if Plaintiffs had standing to bring this claim, it is also not apparent that Fortunato *personally* used Plaintiffs' alleged trademark and thus a Lanham Act claim against him is not appropriate.

Plaintiffs' Lanham Act claim is dismissed without prejudice as to Fortunato.

### b. Breach of Fiduciary Duty

To state a claim for breach of fiduciary duty, a plaintiff must show that: "(1) a fiduciary duty exists; (2) the fiduciary duty was breached; and (3) the breach proximately caused the injury of which the plaintiff complains." *Ball v. Kotter*, 723 F.3d 813, 826 (7th Cir. 2013).

Plaintiffs allege Fortunato breached his fiduciary duties by: "(a) mismanaging funds invested into the Business by [] Ottaviani; (b) failing to pay [] Ottaviani any returns on his investments of time and money into the Business; [and] (c) allowing a separate limited-liability company in which [] Ottaviani has no ownership interest, [RO LLC], to own and hold the business license for the Chicago Bakery, which rightfully

belongs to 5742 [].” Dkt. # 21, ¶ 113.[3]  He also refused to permit Plaintiffs access to the books and records of 5742 and RO LLC.  *Id*. ¶¶ 95–96.

Fortunato first argues that Plaintiffs do not allege he owed a fiduciary duty to New Paradise, which is not a member of 5742 or RO LLC.  Plaintiffs failed to respond to this point and therefore waived the argument.  *See Bonte v. U.S. Bank, N.A*., 624 F.3d 461, 466 (7th Cir. 2010) (“Failure to respond to an argument . . . results in waiver.”).  New Paradise’s breach of fiduciary duty claim against Fortunato is dismissed.

Fortunato does not dispute that he, as manager of 5742 and RO LLC, owes a fiduciary duty to Ottaviani.  But he asserts that the amended complaint does not establish he breached that duty, and only includes insufficient facts and legal conclusions.  Specifically, the amended complaint does “not allege a single instance of misuse of [Ottaviani’s] investment or mismanagement of either [5742 or RO LLC].  Plaintiffs characterize normal and customary business practices as fraudulent or tortious and then [] conclude that since [Ottaviani] has not received a distribution, misuse or mismanagement has occurred.”  Dkt. # 38, at 5–6.  Fortunato contends that payment of distributions is discretionary under the Operating Agreement and the lack of distribution payments therefore cannot constitute a breach of fiduciary duty.   Furthermore,

---

[3] The amended complaint also asserts that Fortunato breached his fiduciary duties by “allowing the comanager of a separate limited-liability company which [Ottaviani] has no ownership interests, [RP LLC], to encumber the property owned by 5742 [] with a mortgage and use the proceeds of the mortgage loan for purposes other than those beneficial to 5742 [].”  Dkt. # 21, ¶ 113.  The Court rejected this allegation in its order granting RP LLC’s motion to dismiss, finding it was “vague, unsupported, speculative, and conclusory.”  Dkt. # 50, at 6–8.  We also reject that theory *infra*.  For the same reasons, that allegation is disregarded here.

Fortunato attaches exhibits purporting to show that Ottaviani is a member of RO LLC, an entity formed to hold the assets of the Chicago Bakery, and the formation and actions of RO LLC properly facilitated the Chicago Bakery's operations.

We disagree with Fortunato in part and find that Ottaviani has sufficiently alleged his breach of fiduciary duty claim in some respects. We find it particularly important that Fortunato refused to produce the books and records of his and Ottaviani's business venture when asked, thereby preventing Ottaviani from learning more about 5742 and RO LLC's finances and transactions. The refusal to provide books and records is problematic on its own. *See C.O.A.L., Inc. v. Dana Hotel, LLC*, 2017 IL App (1st) 161048, ¶ 173. But we also take it into account when assessing the sufficiency of Ottaviani's other allegations. *See Green v. Beth*, 663 F. App'x 471, 474 (7th Cir. 2016) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)) ("plaintiff may plead upon information and belief where 'facts are particularly in possession and control of defendant'").

Specifically, because Ottaviani is not in a position to know specifics about the Business's net operating cash flow or profits, his allegations regarding Fortunato not paying distributions or sharing profits may proceed for now. *See Ferenc v. Brenner*, 2014 WL 884334, at *4 (N.D. Ill. 2014) ("The fact that the Manager had broad discretion under [the operating agreement] to manage the company does not foreclose the plaintiff's claim that the defendants exercised that discretion improperly."). Whether Fortunato abused his discretion as manager is a question of fact to be resolved

13

later.

Ottaviani's allegations regarding Fortunato improperly starting RO LLC and having that company hold 5742's business license may also proceed for now. While Fortunato's actions may very well have been above board, that is a question of fact.

However, we do find that Ottaviani's allegations of misuse of funds and/or a scheme to embezzle funds from the Business are too speculative and do not pass muster under Rule 8. *See Twombly*, 550 U.S. at 555. It is too large of a logical leap to conclude that just because some of the Chicago Bakery's suppliers were not paid, some mismanagement of funds occurred. These allegations do not "nudge[]" Plaintiffs' claim "across the line from conceivable to plausible." *See Iqbal*, 556 U.S. at 680.

Ottaviani's breach of fiduciary duty claim against Fortunato is dismissed in part but may proceed as to the allegations regarding refusing to provide books and records, failure to pay distributions and profits, and RO LLC's involvement.

### c. Fraudulent Misrepresentation

To state a fraudulent misrepresentation claim under Illinois law, Plaintiffs must allege: "'(1) [a] false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance.'" *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012) (quoting *Dloogatch v. Brincat*, 396 Ill. App. 3d 842, 847 (2009)). "Under the heightened federal pleading standard of Rule 9(b) of the Federal Rules of Civil

Procedure, a plaintiff alleging fraud . . . must state with particularity the circumstances constituting fraud." *Id.*

Fortunato argues that Plaintiffs fail to state with particularity what his alleged misrepresentation was, but Plaintiffs counter that the amended complaint alleges Fortunato told Ottaviani that he would be a one third owner of 5742 and receive a proportionate share of the proceeds, including a share of 5742's income and income from renting units in the Building. They further allege Fortunato knew these statements were false and intended Ottaviani to rely on them so that he would contribute his money, expertise, time, and the New Paradise name.

We find that Plaintiffs' allegation is one involving a promise of future conduct, i.e., "promissory fraud"—which is generally not actionable under Illinois law. *See Wigod*, 673 F.3d at 570. For a "false statement of intent regarding future conduct" to be actionable, the plaintiff must also plead that the act was part of a "scheme to defraud." *Id.* "To invoke the scheme exception, the plaintiff must allege and then prove that, at the time the promise was made, the defendant did not intend to fulfill it." *Id.* (citing *Bower v. Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992)). "Such evidence would include 'a pattern of fraudulent statements, or one particularly egregious fraudulent statement.'" *Id.* (quoting *BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 136 (7th Cir. 2011)).

Plaintiffs do not identify a "scheme" or "pattern" of fraudulent statements beyond Fortunato's representations regarding Ottaviani's role in the Business.

Plaintiffs' claim is impermissibly based on a promise of future conduct, and thus dismissed. *See id*.; *see also Tibor Mach. Prds. v. Freudenberg-Nok*, 1996 WL 99896, at *4 (N.D. Ill. 1996) ("It is well established under Illinois law that a plaintiff does not state a cause of action for fraud merely by alleging that the defendant had no intention to perform when the contract was made.").

Fortunato's motion is granted as to this claim, which is dismissed without prejudice.

### d. Fraudulent Concealment

The heightened pleading standard of Rule 9(b) also applies to fraudulent concealment claims. *Wigod*, 673 F.3d at 571. To state a fraudulent concealment claim under Illinois law, Plaintiffs must allege:

> (1) the concealment of a material fact; (2) that the concealment was intended to induce a false belief, under circumstances creating a duty to speak; (3) that the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist; (4) that the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the fact was concealed led to his injury.

*See Trs. of the AFTRA Health Fund v. Biondi*, 303 F.3d 765, 777 (7th Cir. 2002).

As with the breach of fiduciary duty claim, Fortunato first argues that Plaintiffs fail to allege he owed a fiduciary duty to New Paradise, which is not a member of 5742 or RO LLC. Plaintiffs failed to respond to this point and therefore waived the argument. *See Bonte*, 624 F.3d at 466. New Paradise's fraudulent concealment claim against

16

Fortunato is dismissed.

Fortunato contends Plaintiffs fail to state what material facts he concealed. Plaintiffs counter that the amended complaint alleges he failed to inform Ottaviani that Fortunato had no intention of sharing the promised proceeds with Ottaviani, as well as that he was forming RO LLC to hold 5742's business license. Unlike fraudulent misrepresentation claims, fraudulent concealment does not require a misstatement of a past or existing fact. Rather, a defendant may have a duty to correct a misapprehension of fact whether they always knew of the misapprehension or learned of it later. *See Allied Metal Co. v. Elkem Materials, Inc.*, 2022 WL 16540199, at *5 (N.D. Ill. 2022) (Kocoras, J.). The parties do not dispute that Fortunato had a fiduciary duty to Ottaviani as members of 5742. Whether Fortunato had a duty to disclose his intentions throughout his business relationship with Ottaviani is a fact question that cannot be answered now. The motion to dismiss is denied as to Ottaviani's fraudulent concealment claim.

### e. Conversion

"To state a claim for conversion under Illinois law, a plaintiff must allege: '(1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property.'" *Toll Processing Servs., LLC v. Kastalon Polyurthane Prods.*, 880 F.3d 820, 824 (7th Cir. 2018) (quoting *Gen. Motors Corp. v.*

17

*Douglass*, 206 Ill. App. 3d 881, 886 (1990)).

Fortunato asserts that Plaintiffs fail to sufficiently state a claim for conversion against him. Plaintiffs summarize their conversion claim as follows:

> As alleged in the complaint, Mr. Ottaviani invested large sums of money into the Business based on [Fortunato's] representations that Mr. Ottaviani would receive a one-third share of the ownership and profits. These funds were intended to be used solely to open and operate the Chicago Bakery. They were not used for this purpose, and Mr. Ottaviani has demanded their return.

Dkt. # 46, at 9–10 (citations omitted). But the only factual allegation supporting Plaintiffs' contention that Ottaviani's invested funds were not used "to open and operate the Chicago Bakery" is that "various suppliers of the Chicago Bakery have not been paid for products they provided to the Chicago Bakery." *Id*. Again, that is too large of a logical leap. The referenced suppliers might not have been paid for any number of legitimate reasons. The allegation fails to show that the funds were instead used for some nefarious, non-business purpose. Plaintiffs' conversion claim fails because it based entirely on speculation.[4] *See Iqbal*, 556 U.S. at 680 (claims fail to meet Rule 8 standard when they are not "nudged . . . across the line from conceivable to plausible."). Fortunato's motion is granted as to the conversion claim.

### f.  Unjust Enrichment

"To state a claim for unjust enrichment under Illinois law, 'a plaintiff must allege

---

[4] New Paradise's claim against Fortunato fails for the additional reason that the amended complaint does not allege New Paradise gave any money to Fortunato—the investment at issue was made by Ottaviani, only.

that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 671 (7th Cir. 2023) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (Ill. 1989)). "But a plaintiff may not recover under an unjust enrichment theory if there is an enforceable contract that governs the relevant subject matter." *Id.* (citing *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 886 (7th Cir. 2022)). This "makes sense" because if "a defendant has fulfilled her obligations under a valid contract with the plaintiff, then she cannot be said to have acted 'unjustly' to the plaintiff's detriment," and if the defendant has not fulfilled those obligations, "then the plaintiff has a remedy at law for breach." *Id.*

Fortunato argues that Plaintiffs' unjust enrichment claim fails because they mischaracterize Ottaviani's investment in the Business as contributions given to Fortunato personally, and that the amended complaint and exhibits show Ottaviani invested in 5742 "which is the only party that could benefit from his investment." Dkt. # 38, at 10. And any remuneration would be governed by the Operating Agreement. *Id.*

> Plaintiffs' response is unpersuasive. They assert that Fortunato:
>
> unjustly retained numerous benefits to Plaintiffs' detriment, including the money, labor, training, and goodwill that Plaintiffs have provided *to the Business*, without giving Plaintiffs any remuneration in exchange. In addition to the €440,000 that Mr. Ottaviani contributed *to the Chicago Bakery*, he personally spent large amounts of time and energy training *the*

> *Chicago Bakery's* staff, helping [Fortunato] establish relationships with *suppliers*, and ensuring [Fortunato] had the knowledge and resources to successfully *run the Chicago Bakery*. He also let [Fortunato] use the Palermo Bakery's name, reputation, and goodwill to *establish the Chicago Bakery*.

Dkt. # 46, at 11 (emphasis added). Plaintiffs essentially concede that any contributions were not to Fortunato personally. They attempt to counter that point by arguing the amended complaint alleges Fortunato "used the Business as a pretense for obtaining funds from Mr. Ottaviani that were ***not*** used to further the Business's interests and that were, instead, used to enrich [Fortunato], his family members, and the other entities he controls." *Id.* But as with the conversion claim, Plaintiffs' theory that Ottaviani's contributions were not used for the Business is based only on the allegation that certain suppliers were not paid, which is mere conjecture. Plaintiffs' unjust enrichment claim against Fortunato fails to meet Rule 8's standard, and Fortunato's motion is granted as to this claim which is dismissed without prejudice.

### g. Civil Conspiracy

Next, Fortunato argues that Plaintiffs fail to state a claim for civil conspiracy, the elements of which are "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 209 Ill. 2d 302, 317 (2004). "[A]greement is a necessary and important element of a cause of action for civil conspiracy, [but] . . . [i]t is only where means are employed, or purposes are

20

accomplished, which are themselves tortious, that the conspirators who have not acted but have promoted the act will be held liable." *Adcock v. Brakegate, Ltd*., 164 Ill. 2d 54, 63 (1994) (cleaned up).

Plaintiffs allege Fortunato engaged in a civil conspiracy by, along with Vito, Maria, and RO LLC,[5] "conspir[ing] to defraud Mr. Ottaviani, convert [his] funds, and unjustly enrich themselves at Mr. Ottaviani's expense." Dkt. # 21, ¶ 148. Plaintiffs further allege these Defendants "acted overtly in furtherance of their agreement to achieve these unlawful purposes by (a) participating in misusing funds Mr. Ottaviani invested in the Chicago Bakery, (b) operating the Chicago Bakery through a limited-liability company in which Mr. Ottaviani has no ownership interest, and (c) encumbering the property owned by 5742 [] with a mortgage and using the proceeds of the mortgage loan for purposes other than those beneficial to 5742 []." *Id*. ¶ 149.

As discussed above, Plaintiffs fail to allege Fortunato misused any Business funds or did anything improper with respect to the Mortgage. So to the extent the conspiracy claim is based on those allegations, this claim is dismissed. To the extent this claim against Fortunato is based on any of the above-dismissed claims, i.e., a Lanham Act claim, fraudulent misrepresentation, conversion, or unjust enrichment, this claim is also dismissed. But to the extent the conspiracy claim is based on fraudulent concealment or the remaining breach of fiduciary duty allegations, it may proceed.

---

[5] This claim was also alleged against RP LLC, but the Court dismissed all claims against RP LLC. Dkt. # 50.

Fortunato also argues "Plaintiffs fail to allege facts to establish that Fortunato knowingly entered into an agreement with any of the other defendants to commit an overt tortious or unlawful act or that he knew of any alleged overt or tortious act committed by any other Defendant in furtherance of such agreement." Dkt. # 38, at 11. But we find the claim passes muster at the motion to dismiss stage. *See Geinosky v. City of Chi.*, 675 F.3d 743, 749 (7th Cir. 2023) ("rather conclusory" conspiracy allegations can suffice when it "is a challenge to imagine a scenario in which the [alleged behavior] would not have been the product of a conspiracy.").

Fortunato's motion to dismiss the conspiracy claim against him is accordingly granted-in-part and denied-in-part.

### h. Accounting

Finally, Fortunato argues Plaintiffs fail to state a claim for an equitable accounting, which requires a plaintiff to show "the absence of an adequate remedy at law and one of the following: (1) a breach of a fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature." *Chi. Architectural Metals, Inc. v. Bush Constr. Co.*, 2022 IL App (1st) 200587, ¶ 61. Illinois courts "typically do not enforce the requirement that there be no adequate legal remedy when the accounting is based on a breach of fiduciary duty." *Id*.

Because the complaint adequately alleges a breach of fiduciary duty against Fortunato, the accounting claim may proceed against him. *See id*. However, we note

22

that "retaining this claim will most likely be of little consequence since discovery will likely reveal the information plaintiff seeks." *Am. Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.*, 2004 WL 3363844, at *18 (N.D. Ill. 2004).

## II.  Maria's Motion to Dismiss

### a.  Aiding and Abetting Breach of Fiduciary Duty

As noted above, Plaintiffs assert Fortunato breached his fiduciary duty to Ottaviani and 5742 in part by "allowing the comanager of a separate [LLC] in which Mr. Ottaviani has no ownership interest, [RP LLC], to encumber the property owned by [5742] with a mortgage and use the proceeds of the mortgage loan for purposes other than those beneficial to 5742 []."  Dkt. # 21, ¶ 113.  Plaintiffs allege Maria aided and abetted Fortunato's purported breaches of fiduciary duty because she was "aware of, and encouraged, [Fortunato's] mismanagement and misuse of the funds Mr. Ottaviani contributed to the Business, as well as his mismanagement and misuse of [5742's] assets."  *Id*. ¶ 143.  Plaintiffs further allege that Maria, "individually and as a representative of [RP LLC], knowingly and substantially assisted [Fortunato's] breaches of fiduciary duty by obtaining a mortgage on the property [co-owned] by Mr. Ottaviani without [his] consent and without any identifiable benefit to Mr. Ottaviani or 5742 []."  *Id*. ¶ 145.

To successfully plead claim for aiding and abetting a breach of fiduciary duty, the plaintiff must allege the following elements: "(1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly

aware of his role as part of the overall or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 27–28 (2003).

The Court agrees with Maria that Plaintiffs have not sufficiently alleged facts supporting an aiding and abetting claim against her. For largely the same reasons we discussed in dismissing the aiding and abetting claim against RP LLC, there are simply no allegations that Maria helped anyone to perform a wrongful act or assisted a principal violation:

> As to this claim, Plaintiffs allege that Fortunato "allowed" Maria, the comanager of RP LLC, to "encumber" the Building owned by 5742 with a mortgage and "use the proceeds of the mortgage loan for purposes other than those beneficial to 5742 []." Dkt. # 21, ¶ 113. Plaintiffs' support this solely with the allegation that Maria, "individually and as a representative of [RP LLC]," obtained a mortgage on the Building without Ottaviani's consent and without any benefit to him or to 5742. *Id*. ¶ 145. The crux of Plaintiffs' argument seems to be that because Maria happened to be a manager of RP LLC, she was therefore acting on behalf of RP LLC when she signed the Mortgage. But there is nothing to support that bare assertion. Rather, the Mortgage borrower was 5742 and Maria signed it on behalf of 5742. Dkt. # 21-9, at 1, 16. Nothing in the Amended Complaint indicates that Maria was acting on RP LLC's behalf or that RP LLC had anything to do with the Mortgage. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient).

*See* Dkt. # 50, at 6–7 (footnote omitted). We noted that "Plaintiffs' assertion that Maria was acting on behalf of RP LLC when she signed the Mortgage is pure speculation and contradicted by the Mortgage itself." *Id*. at 7 n.1.

As with RP LLC, we reject Plaintiffs' response argument that "to the extent that [RP LLC] is a repository for any of the funds [Fortunato] improperly obtained or withheld from Mr. Ottaviani, [RP LLC's] possession of those funds, as enabled by [Maria], further supports Plaintiffs' aiding-and-abetting claim against [her]." Dkt. # 48, at 6. Plaintiffs again cite their accounting claim, but the only relevant statements there are that Fortunato "also manages" RP LLC and that RP LLC, "through Fortunato [] and [its] other agents, [has] been involved in using the funds invested by" Ottaviani and "holding and encumbering assets that belong to 5742 []." Dkt. # 21, ¶ 156. These vague, unsupported, speculative, and conclusory allegations are insufficient to plead that RP LLC ever used or received any of Ottaviani's investment, so Maria could not have "enabled" anything.

Plaintiffs spend much time on Maria's argument that under the Operating Agreement, Fortunato had the right to let 5742's property be mortgaged. But Plaintiffs' contention that Fortunato abused his managerial discretion, aided and abetted by Maria, is supported only by the theory that the mortgage lacked "any financial benefit to 5742" because it was actually taken out on behalf of RP LLC, not 5742. Dkt. # 48, at 6–7. But as discussed above, we have rejected that theory given that the mortgage itself makes it clear that Maria signed it on behalf of 5742. Whether it was proper for her to do so is a separate question, not at issue here. The only question at issue (because it is the basis of Plaintiffs' aiding and abetting claim against Maria) is whether the amended complaint sufficiently alleges the mortgage was on behalf of RP LLC instead of 5742,

to which the answer is "no."

Accordingly, Count VII is dismissed without prejudice as to Maria.

### b. Civil Conspiracy

Next, Maria argues that Plaintiffs fail to state a claim for civil conspiracy. Plaintiffs allege Maria engaged in a civil conspiracy because she, Fortunato, Vito, RP LLC[6], and RO LLC "conspired to defraud Mr. Ottaviani, convert Mr. Ottaviani's funds, and unjustly enrich themselves at Mr. Ottaviani's expense." *Id.* ¶ 148. Plaintiffs further allege these Defendants "acted overtly in furtherance of their agreement to achieve these unlawful purposes by (a) participating in misusing funds Mr. Ottaviani invested in the Chicago Bakery, (b) operating the Chicago Bakery through a limited-liability company in which Mr. Ottaviani has no ownership interest, and (c) encumbering the property owned by 5742 [] with a mortgage and using the proceeds of the mortgage loan for purposes other than those beneficial to 5742 []." *Id.* ¶ 149.

As with respect to RP LLC, we find that these conclusory statements and "[t]hreadbare recitals of the elements" of the claim are not enough to implicate Maria in a civil conspiracy. *See Iqbal*, 556 U.S. at 678; *see also Reuter v. MasterCard Int'l, Inc.*, 397 Ill. App. 3d 915, 928 (2010) ("Conclusory allegations that the defendants agreed with others to achieve some illicit purpose are not sufficient."). There are no factual allegations showing Maria formed any agreement or participated in any

---

[6] We have already dismissed this claim as to RP LLC. Dkt. # 50, at 8–10.

wrongful acts.

In response, Plaintiffs first rehash their bases for the aiding and abetting claim, i.e., that Maria "encumbered" the Building with a mortgage on behalf of RP LLC. We have already rejected that theory. Plaintiffs also assert Maria was involved in the alleged conspiracy through her "awareness and encouragement of the mismanagement and misuse of the funds Mr. Ottaviani invested in the Chicago Bakery." Dkt. # 48, at 10. The amended complaint is also completely devoid of facts tying Maria to any "mismanagement and misuse of funds," to the extent that occurred at all.

Plaintiffs argue Maria, "who is Mr. Rubino's wife and comanages [RP LLC] with him, understood, either explicitly or implicitly, the objectives of the conspiracy to engage in the unauthorized use of Plaintiffs' intellectual property, defraud Plaintiffs, convert Mr. Ottaviani's funds, and unjustly enrich certain defendants at Plaintiffs' expense." Dkt. # 48, at 11. But all Plaintiffs cite in support are paragraphs from the "Parties" section of the amended complaint stating that Fortunato is a member and manager of 5742, a manager of RO LLC, and a manager of RP LLC, that Maria is Fortunato's wife, and that Maria is a manager of RP LLC. *Id.* (citing Dkt. # 21, ¶¶ 16, 21–22). This does nothing to support Plaintiffs' position. Count VIII is dismissed without prejudice as to Maria.

## **CONCLUSION**

Defendant Fortunato Rubino's motion to dismiss [38] is granted-in-part and denied-in-part and Defendant Maria Rubino's motion to dismiss [43] is granted. The

amended complaint is dismissed in part without prejudice as to Fortunato and dismissed without prejudice as to the Maria. The parties shall file a joint status report by 8/7/2024 informing the Court of their view of next steps in this case, including the possibility of settlement, the expected nature and length of discovery, and a proposed discovery schedule.

It is so ordered.


_____
Charles P. Kocoras
United States District Judge

Date: July 17, 2024